UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
IINDIANAPOLIS DIVISION

KENNETH R. MEAL,                          )
                                          )
                      Plaintiff,          )
                                          )
            vs.                           )     No. 1:15-cv-0468-DKL-RLY
                                          )
CAROLYN W. COLVIN, Acting                 )
Commissioner of Social Security,          )
                                          )
                      Defendant.          )


*Entry on Judicial Review*

Plaintiff appeals the decision of the Commissioner of Social Security denying his

application for social security benefits. *See* 42 U.S.C. § 405(g). The parties have consented

to the Magistrate Judge's exercise of jurisdiction, and Chief Judge Richard L. Young has

referred the case to the undersigned to conduct all proceedings.

## I. Background

Kenneth R. Meal applied for disability insurance benefits and supplemental

security income, alleging disability beginning January 12, 2012, due to impairments from

compressed disk, bone spurs, arthritis, missing left thumb, gall bladder, liver condition,

neuropathy, knee conditions, high blood pressure, diabetes, muscle spasms, restless leg

syndrome, sleep apnea, migraines, a kidney condition, Chrohn's disease, depression,

mental conditions, anxiety, and brain damage. [R. 79.] His claims were denied both

initially and on reconsideration. Meal requested an administrative hearing, and a hearing

was held before an Administrative Law Judge ("ALJ") in October 2013. Meal, who was represented by counsel, testified at the hearing along with a vocational expert ("VE"). Thereafter, the ALJ issued her decision, denying Meal's claims.

At the hearing Meal testified about his impairments, focusing on his back problems. He said that his back "went out" on him. [R. 48.] He has treated with shots, pain medications, and he had seen a chiropractor who "cracked my neck," after which relieved him of the pain. [R. 48-49.] But apparently the pain returned. Meal rated his current pain level as a nine, with ten meaning that he would have to seek emergency room treatment. [R. 49.] However, he was not currently taking any pain medications; his only medications at the time were Pravastatin (to lower cholesterol and triglycerides) and Librium (for anxiety). [R. 47] Meal had used a cane once for a three or four month period when his "back went out." [R. 48.] He was not using a cane at the time of the hearing and had not used one for about one year. [R. 48, 51.]

Meal also testified that he has pain and numbness in his hands and feet, which causes him to drop things, fall down, and makes walking difficult. [R. 51.] He lost his left thumb in a shotgun accident. [*Id.*] Meal has trouble breathing due to asthma and COPD. [R. 54.] He has suffered from depression, anxiety, panic attacks, and testified that he has no friends. [R. 53.] He sought mental health treatment, but ultimately declined services, explaining that the mental health professionals were trying to "make me live by different rules and stuff" and "[t]here ain't nobody tell me nothing." [R. 54.] He was in special education in school, he repeated a few grades, and he has obtained IQ scores of 60, 63, 74, and 78. [*Id.*] Although he has problems concentrating, he could concentrate

on "something pretty easy" for two hours at a time. [R. 55.] Meal cooks, cleans the house, does stuff around the yard, like cleaning up, picking up, and mowing. [R. 49-50.]

The ALJ determined that Meal met the insured status requirements of the Social Security Act through June 30, 2015. [R. 12.] The ALJ used the five-step sequential process for analyzing disability claims, *see* 20 C.F.R. §§ 404.1520(a)(4) and 416.902(a), and found that Meal had not engaged in substantial gainful activity since the alleged disability onset date. [R. 14.] She determined that he suffered from severe impairments of degenerative disc disease of the lumbar spine, amputation of the left thumb, chronic obstructive pulmonary disease, obesity, and borderline intellectual functioning. [*Id.*] She found that Meal did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. [R. 15.]

The ALJ assessed Meal's residual functional capacity, finding that he could perform light work with restrictions:

> occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; no fine manipulation with the left upper extremity; and [no] more than moderate exposure to airborne irritants. The claimant has the mental capacity to understand, remember, and follow simple instructions. Within these parameters and in the context of performing simple, routine, repetitive, concrete, tangible tasks, the claimant is able to sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence.

[R. 19.] The ALJ determined that Meal was capable of performing past relevant work. [R. 26.] In the alternative, she found that he could perform other jobs that exist in significant numbers in the national economy. [R. 27.] Accordingly, the ALJ found that

Meal was not under a disability and denied his claims.  [R. 28.]  The appeals council denied review, making the ALJ's ruling the Commissioner's final decision.

## II.  Legal Standards

The Social Security Act provides for the payment of benefits to individuals who have contributed to the program and suffer from a physical or mental disability.  The Act also provides for the payment of disability benefits to indigent persons under the Supplemental Security Income program.  *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  "Disability" is the "inability to engage in any substantial gainful activity [because] of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last … not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

Judicial review of the ALJ's decision is limited to determining whether the findings are supported by substantial evidence and whether the ALJ made an error of law.  *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court considers the record as a whole and cannot reweigh the evidence, make credibility determinations, or substitute its judgment for that of the ALJ.  *See Stepp*, 795 F.3d at 718.  The ALJ need not specifically address every piece of evidence in the record, but must build a "logical bridge" from the evidence to her conclusions.  *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## III.  Discussion

Plaintiff contends that substantial evidence does not support the ALJ's decision that he was not disabled due to chronic back and leg pain.  More specifically, he argues that the ALJ erred by failing to consult a medical expert on the issue of whether he meets or medically equals a listed impairment, specifically Listing 1.04A, and erred by improperly evaluating the functional evaluation of his treating physician Dr. Hensley.

A "claimant bears the burden of proving his condition meets or equals a listed impairment," and he must show that he meets all of the criteria of the listed impairment. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).  Listing 1.04(A), the only listing cited by Plaintiff, requires evidence of a disorder of the spine (such as degenerative disc disease), resulting in compromise of a nerve root or the spinal cord with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test[.]"  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).  Although the ALJ determined that Meal had degenerative disc disease of the lumbar spine with limitation of motion, she found no evidence of neuro-anatomic distribution of pain, nerve root compression, compression of a nerve root, muscle atrophy, or documented weakness in his lower extremities.  Nor did she find any opinion that he required an assistive device to ambulate effectively.  [R. 16-17.]  Plaintiff points to no medical evidence which would support a finding that he met or equaled any of these criteria.  Thus, he failed to meet his burden, especially since he was represented by

5

counsel throughout the agency proceedings. *See, e.g., Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (stating that "a claimant represented by counsel is presumed to have made his best case before the ALJ").

Plaintiff suggests that Dr. Hensley's functional evaluation shows that he meets a listing. But that evaluation does not address any of the criteria of Listing 1.04(A) or any other listed impairment. Plaintiff also argues that the ALJ could not have reasonably relied on the state agency reviewing physicians' opinions because they did not consider Dr. Hensley's functional evaluation. An ALJ must consider an expert's opinion on the issue of whether a claimant's impairment meets or equals a listed impairment. *Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004). A state agency reviewing physician's opinion on a disability form satisfies this requirement; such an opinion provides substantial evidence on medical equivalence. *See Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).

The ALJ relied on the state agency reviewing physicians' opinions in this case, albeit giving them little weight. [R. 23.] Plaintiff fails to show that anything in Dr. Hensley's functional evaluation could have changed the reviewing physicians' earlier opinions that he did not meet or equal a listed impairment. Therefore, he has not shown that the ALJ erred in failing to consult a medical expert at the hearing. *See, e.g., S.N.B. v. Colvin*, No. 114CV01371SEBDML, 2016 WL 775787, at *5 (S.D. Ind. Feb. 9, 2016) ("[A]n ALJ does not err in failing to consult a medical expert at the hearing unless there is sufficient indication that new medical evidence not previously reviewed by agency

physicians may change the State agency medical ... finding that the impairment(s) is not equivalent in severity to any [Listed] impairment….") (quotation omitted).

Nor has Plaintiff shown that the ALJ's determination that he did not meet or equal a listing was based on the ALJ's layperson's opinion or was merely based on an assumption that he did not meet or equal a listed impairment. The ALJ's thorough discussion of the evidence demonstrates that she considered all of the medical evidence in determining that Meal did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. [*See* R. 16-19, 20-25.]

Turning to Dr. Hensley's functional evaluation, the ALJ did not overlook or ignore it. In that evaluation, Dr. Hensley determined, among other things, that Meal could not sit, stand or walk for more than one hour at a time, and that during an eight-hour work day, he could sit for a total of three hours and stand and walk in combination for a total of three hours. [R. 437.] The ALJ discussed the evaluation and gave a legitimate reason for affording it "little weight": "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995); 20 C.F.R. 404.1527(c)(2).

The ALJ reasoned that although Dr. Hensley's "opinion suggests that the claimant could not even sustain a full range of sedentary work …, her treatment notes fail to substantiate [her] opinion." [R. 24.] That determination is well-supported by the evidence, namely Dr. Hensley's treatment records. [*See* R. 436-477.] Dr. Hensley diagnosed Meal with sciatica and back pain [R. 438], and on one occasion noted that he had an antalgic gait [R. 471], but she repeatedly found on examination that he had

"normal range of motion, muscle strength and stability in all extremities with no pain on inspection."  [R. 441, 451, 468.]  In addition, Meal had a negative straight-leg raising test bilaterally.  [R. 441.]  Thus, the record supports the ALJ's conclusion that Dr. Henlsey's treatment notes fail to support her opinion that Meal was incapable of even sedentary work.

Plaintiff argues that substantial evidence fails to support the ALJ's finding that he could perform some jobs, challenging the ALJ's hypothetical to the VE.  But the hypothetical accounted for all limitations that the ALJ found, and therefore, it was proper. And the VE's testimony provides substantial evidence to support the ALJ's finding.

Finally, Plaintiff makes several broad, undeveloped arguments.  For example, he argues that the ALJ ignored or rejected evidence that proved disability and failed to build an accurate and logical bridge from the evidence to her conclusions.  [*Pl.'s Brief Support Complaint to Review Decision of Social Security Administration*, doc. 19 at 7-9.]  Because these arguments are undeveloped, they have been forfeited.  *See, e.g.*, *Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001) ("We have held time and again that perfunctory and undeveloped arguments … are waived.").  In any event, the ALJ did not commit these alleged errors and her decision is supported by substantial evidence.

### Conclusion

For the foregoing reasons, the Commissioner's decision should be affirmed.

DATED:   05/26/2016

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record

9